## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISCTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| TIMOTHY MARSHALL,           ) | |
|    Plaintiff,              ) | |
| ) | Case No.:      4:19-cv-03181 |
| v.                          ) | |
| ) | |
| THE PRESBYTERIAN MANORS OF  ) | Division: |
| MID-AMERICA, INC.,          ) | |
| **Serve Registered Agent at:** ) | |
| **C.T. Corporation System**    ) | |
| **120 South Central Avenue**   ) | **JURY TRIAL DEMANDED** |
| **Clayton, MO  63105**,         ) | |
| ) | |
| and                         ) | |
| ) | |
| ASHFIELD ACTIVE LIVING AND  ) | |
| WELLNESS COMMUNITIES, INC.  ) | |
| D/B/A ABERDEEN HEIGHTS      ) | |
| **Serve Registered Agent at:** ) | |
| **C.T. Corporation System**    ) | |
| **120 South Central Avenue**   ) | |
| **Clayton, MO  63105**,         ) | |
|    Defendants.            ) | |

## COMPLAINT

COMES NOW Plaintiff Timothy Marshall, by and through his undersigned counsel, and for his Complaint ("Complaint") against Defendants The Presbyterian Manors of Mid-America, Inc. ("PMMA") and Ashfield Active Living and Wellness Communities, Inc., d/b/a Aberdeen Heights ("Aberdeen") states as follows:

## JURISDICTION AND VENUE

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200(e) *et seq.* ("Title VII"), 42 U.S.C. § 1983, the 14th Amendment to the United States Constitution, and the Missouri Human Rights Act, RSMo. §§ 213.010, *et seq.*, to redress Plaintiff's claims of race discrimination.

2. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's Complaint alleges violations of Title VII of the Civil Rights Act of 1964, as amended, *et seq*.

3. Venue is proper in the United States District Court for the Eastern District of Missouri, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in the City of Kirkwood, Missouri in St. Louis County, State of Missouri.

4. Divisional venue is proper in the Eastern Division because a substantial part of the events leading to the claims for relief arose in the City of Kirkwood in St. Louis County, State of Missouri, and Defendant conducts, and at all relevant times, has regularly conducted business in St. Louis County, State of Missouri in the Eastern Division through its brick-and-mortar stores.  E.D. Mo. L.R. 2.07(A)(1), (B)(1).

5. Plaintiff demands a trial by jury, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff, Timothy Marshall (sometimes hereafter referred to as "Plaintiff"), is a United States citizen and a resident of St. Louis County, Missouri.  During all pertinent times hereto, Plaintiff was a resident of St. Louis County, Missouri.

7. Defendant PMMA is incorporated as a foreign Kansas corporation, duly organized under the Constitution of Kansas and doing business in the State of Missouri, with its principal place of business located at 2414 Woodlawn Boulevard, Wichita, Kansas 67220.

8. Defendant Aberdeen is incorporated as a Missouri corporation, duly organized under the Constitution of Missouri and doing business in the State of Missouri, with its principal place of business located at 2414 Woodlawn Boulevard, Wichita, Kansas 67220.

9. Upon information and belief, Defendant PMMA is the parent company of Defendant Aberdeen.

**FACTS**

10. Plaintiff realleges and incorporates herein by reference each and every of the preceding allegations of this Complaint as if fully set forth herein.

11. Plaintiff was employed on a full-time basis by Defendant Aberdeen as a cook from April 2016, until he was discharged on or about January 8, 2018.

12. On October 8, 2018, Plaintiff dually filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), with Charge Number 560-2019-00051, and the Missouri Commission on Human Rights ("MCHR"), no Charge Number was provided in connection with the MCHR.

13. On August 30, 2019, Plaintiff received a Notice of Right to Sue from the EEOC.

14. Defendant PMMA is a nonprofit business providing nursing home and senior living services in multiple states within the Midwest, including in St. Louis County, State of Missouri, located at 2414 N. Woodlawn Boulevard, Wichita, Kansas 67220.

15. At all pertinent times hereto, Defendant PMMA was the parent company of Defendant Aberdeen.

16. At all pertinent times hereto, Defendant PMMA, was an "employer" as defined by Title VII, in that Defendant PMMA employs fifteen (15) persons or more in the State of Kansas and Missouri and is duly authorized to transact business in the State of Missouri under the laws of the State of Missouri.

17. At all pertinent times hereto, Defendant PMMA was doing business by and through its subsidiary Defendant Aberdeen in the City of Kirkwood in St. Louis County,

Missouri, and may be served by and through its Registered Agent, C.T. Corporation System, 120 South Central Avenue, Clayton, MO 63105.

18. Defendant Aberdeen is a nonprofit business providing nursing home and senior living services in the City of Kirkwood in St. Louis County, State of Missouri, located 575 Couch Avenue, Kirkwood, Missouri 63122.

19. At all pertinent times hereto, Defendant Aberdeen, was an "employer" as defined by Title VII, in that Defendant Aberdeen employs fifteen (15) persons or more in the State of Missouri and is duly authorized to transact business in the State of Missouri under the laws of the State of Missouri.

20. At all pertinent times hereto, Defendant Aberdeen was doing business in the City of Kirkwood in St. Louis County, Missouri, and may be served by and through its Registered Agent, C.T. Corporation System, 120 South Central Avenue, Clayton, MO 63105.

21. At all pertinent times hereto, Plaintiff's direct supervisor was Head Cook Eric Wright.

22. At all pertinent times hereto, Plaintiff received high marks during his reviews.

23. On or about May 2017, due to Plaintiff's excellent reviews he received a raise.

24. Upon information and belief, Ms. Carol Colich ("Colich") served as the Director of Human Resources for Defendant Aberdeen.

25. Plaintiff is an African-American male.

26. Colich is a Caucasian female.

27. Due to Colich's position as Director of Human Resources, she had supervisory authority over Plaintiff.

**DRUG TESTS**

28. Upon information and belief, Defendant Aberdeen maintains a written Drug Testing Policy ("Policy") as described in its Employment Handbook that is provided to its employees upon employment.

29. Upon information and belief, Defendant Aberdeen's Policy provides four (4) occasions when a drug test will be administered.

30. Upon information and belief, the four (4) occasions for initiating a drug test pursuant to Defendant Aberdeen's Policy are:

(a) At Hire;

(b) Post-Accident;

(c) For Cause; and

(d) Random.

31. Upon information and belief, Defendant Aberdeen's Policy defines its "For Cause" basis for administering a drug test as, "For cause. Drug testing, which may include testing for alcohol, may be done when an employee shows signs of impairment on the job. For cause testing may also be done in instances of missing narcotic medications."

32. Upon information and belief, Defendant Aberdeen's Policy defines its Random basis for administering a drug test as, "Random. A number of employees are randomly selected to undergo a drug test. Random tests are done to ensure the continuing compliance with the Drug and Alcohol Abuse policy."

**First Drug Test.**

33. On or about May 15, 2017, Plaintiff received a request for a random drug test and thereafter submitted a urine sample for urinalysis.

34. On information and belief, the results of Plaintiff's May 15, 2017 urinalysis were negative for all drugs tested.

**Second Drug Test.**

35. On or about May 31, 2017, Plaintiff received another request for a random drug test.

36. After receiving the May 31, 2017 request for a random drug test, Plaintiff reported to Colich and informed Colich that he had passed a drug test on May 15, 2017.

37. Upon information and belief, after Colich was informed by Plaintiff of his May 15, 2017 drug test results she stated that she "can give [Plaintiff] a drug test when she wants to."

38. During her May 31, 2017 meeting with Plaintiff, Colich further stated that she "worked at the clinic on MLK. [She] worked with you people."

39. At the conclusion of her May 31, 2017 meeting with Plaintiff, Colich ordered Plaintiff to immediately leave the premises and take the drug test.

40. Upon information and belief, it is customary for Defendant Aberdeen to provide its employees two (2) hours in which to report to the drug testing facility.

41. Upon being ordered to leave immediately to report to the drug testing facility, Plaintiff requested permission to take his physician prescribed medication.

42. Colich refused Plaintiff the right to take his physician prescribed medication.

43. On or about May 31, 2017, Plaintiff was suffering from a urinary tract infection.

44. Plaintiff subsequently learned that in addition to a urinary tract infection he was also suffering from kidney stones on or about May 31, 2017.

45. Upon information and belief, it is customary for Defendant Aberdeen to permit its employees to report to the drug testing facility without supervision and without an escort.

46. Upon being ordered to immediately leave and report to the drug testing facility, Colich further ordered her secretary to escort Plaintiff to the drug testing facility.

47. Upon his arrival at the drug testing facility, Plaintiff provided a sufficient sample; however, Plaintiff was informed that it did not "temp out".

48. Plaintiff was required to provide a second urine sample.

49. Plaintiff remained at the drug testing facility for over three (3) hours drinking water in order to provide a second urine sample; however, due to his above-described medical condition, combined with having provided an initial urine sample, Plaintiff was unable to provide a second urine sample.

**Third Drug Test.**

50. On or about June 1, 2017, and as a result of Plaintiff's inability to provide a sufficient sample during the May 31, 2017 drug test, Plaintiff was requested to submit to a Hair Follicle Test.

51. Upon information and belief, Plaintiff reported to the drug testing facility and provided a hair sample for the Hair Follicle Test. The healthcare professional removed the hair sample from Plaintiff's scalp.

52. While the healthcare professional was procuring Plaintiff's hair sample, Plaintiff was informed that Defendant Aberdeen had never requested a Hair Follicle Test for one of its employees.

53. Upon information and belief, the result of Plaintiff's Hair Follicle Test came back as there being an insufficient sample.

### Fourth Drug Test.

54. On or about June 9, 2017, Plaintiff was requested to report to the drug testing facility to provide another hair sample for a Hair Follicle Test during Plaintiff's scheduled day off.

55. Upon information and belief, Plaintiff was further informed that he would have to cover the costs of the drug test.

56. Upon information and belief, it is customary for Defendant Aberdeen to cover the costs of the drug tests of its employees at the drug testing facility.

57. Upon information and belief, a second, larger hair sample was removed from Plaintiff's scalp and submitted to a Hair Follicle Test.

58. Upon receipt of the June 9, 2017 Hair Follicle Test results, Plaintiff was informed that his hair sample was positive for: Marijuana, Cocaine and Benzoylecgonine.

59. As a result of the June 9, 2017 test results, Plaintiff was suspended for a period of two (2) weeks and informed that he must participate in and complete Defendant Aberdeen's Employee Assistance Program ("EAP") before Plaintiff would be allowed to return to work.

60. After Plaintiff served his two (2) week suspension and completed the EAP he was permitted to return to work.

### Fifth Drug Test.

61. On or about Mid-July 2017, Plaintiff was requested to report to the drug testing facility to provide another hair sample for a Hair Follicle Test for Plaintiff's fifth drug test.

62. Upon information and belief, Plaintiff was further informed that he would have to cover the costs of the drug test.

63. Upon information and belief, it is customary for Defendant Aberdeen to cover the costs of the drug tests of its employees at the drug testing facility.

64. Upon information and belief, another hair sample was removed from Plaintiff's scalp and submitted to a Hair Follicle Test.

65. Plaintiff was informed by the healthcare professional that retesting an individual so soon after a positive test result would result in another positive test result.

66. Upon information and belief, Plaintiff's fifth test results were only positive for Marijuana, and not for Cocaine or Benzoylecgonine.

**Sixth Drug Test.**

67. On or about December 15, 2017, Plaintiff received a sixth request within six (6) months to submit to a drug test during Plaintiff's scheduled day off.

68. Upon information and belief, Plaintiff was further informed that he would have to cover the costs of the drug test.

69. Upon information and belief, it is customary for Defendant Aberdeen to cover the costs of the drug tests of its employees at the drug testing facility.

70. Upon information and belief, Colich informed Plaintiff that two (2) employees of Aberdeen reported witnessing Plaintiff smoking from a "one-hitter", being a device commonly used for smoking Marijuana.

71. Plaintiff informed Colich that he was in fact smoking an electronic cigarette, otherwise known as "vaping", being a device used for smoking nicotine, and he denied the use of Marijuana.

72. On or about December 15, 2017, Plaintiff was required to submit to another Hair Follicle Test and a hair sample was procured from Plaintiff's armpit.

73. Upon information and belief, slower-growing body hair, such as hair found in one's armpits, has a detection window of up to 12 months.

74. While Plaintiff's hair sample was being procured, the healthcare professional procuring the hair sample informed Plaintiff that the drugs found in Plaintiff's June and July 2017 test results would most likely still be present in his hair due to the short period of time which had elapsed between the tests.

75. After submitting his hair sample, and feeling the compounding effects of Colich's targeted harassment of Plaintiff, he returned to work and submitted a written notice of resignation to his direct supervisor, Head Cook Eric Wright.

76. In his written notice of resignation Plaintiff identified December 29, 2017 as his final day of employment with Defendant Aberdeen.

77. On or about December 28, 2017, Plaintiff informed Head Cook Eric Wright that he no longer wished to resign.

78. Upon information and belief, Plaintiff's direct supervisor, Head Cook Eric Wright, accepted Plaintiff's December 28, 2017 rescinded notice of resignation and placed Plaintiff on the work schedule for January 1, 2018 through January 3, 2018.

79. Plaintiff worked his scheduled shifts on January 1-3, 2018.

80. On or about January 5, 2018, Colich was informed of the results of Plaintiff's sixth drug test.  The results were positive for Marijuana only.

81. On or about January 8, 2018, Colich called Plaintiff at home and terminated his employment with Defendant Aberdeen.

82. Upon information and belief, Colich has a racial bias against African-Americans.

83. Upon information and belief, Colich used her position of authority with Defendant Aberdeen to force Plaintiff to submit to six (6) drug tests within a six (6) month period in order to find a pretextual basis upon which to terminate Plaintiff's employment.

84. Upon information and belief, Colich abused her position of authority with Defendant Aberdeen by forcing Plaintiff to submit to four (4) separate drug tests within twenty-five (25) days in order to procure a positive test result from Plaintiff.

85. As a direct and proximate result of Defendant Aberdeen's actions, including the hostile working environment created by the actions and inactions of Colich and others as referenced above, Plaintiff was terminated on January 8, 2018.

86. As a direct and proximate result of Defendant Aberdeen's actions, Plaintiff has sustained, and will continue to sustain, lost wages and benefits.

87. As a direct and proximate result of Defendant Aberdeen's actions, Plaintiff has suffered, and will continue to suffer, emotional distress.

88. As a direct and proximate result of Defendant Aberdeen's actions, Plaintiff has incurred, and will continue to incur, attorneys' fees and costs of litigation.

### COUNT I
### RACE DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT

89. Plaintiff realleges and incorporates herein by reference each and every of the preceding allegations of this Petition as if fully set forth herein.

90. Plaintiff suffered an adverse employment action when he was terminated because of his race.

91. Any purported reasons that Defendant Aberdeen might offer for these actions is nothing but pretext to conceal Defendant Aberdeen's illegal discrimination against Plaintiff.

92. All actions or inactions of or by Defendant Aberdeen occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

93. Plaintiff's race was a compelling factor in such behavior as above-described.

94. Defendant Aberdeen's actions constitute an unlawful employment practice and a violation of Plaintiff's rights under Title VII, as secured by 42 U.S.C. § 2000(e) *et seq*.

95. As a direct and proximate result of such conduct, Plaintiff sustained damage due to his termination resulting in lost wages and retirement benefits.

96. As a direct and proximate result of the acts of Defendant Aberdeen as alleged herein, Plaintiff has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

97. The conduct of Defendant Aberdeen and its employees was outrageous, and evidences an evil motive or reckless indifference for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff, Mr. Timothy Marshall, respectfully requests judgment in his favor against Defendants, jointly and severally, for compensatory damages and punitive damages in excess of $25,000.00, together with pre- and post-judgment interest, plus costs of this action, reimbursement of back pay with interest, reinstatement and/or front pay, attorneys' fees, and such other relief as the Court may deem just and proper under the circumstances.

## COUNT II
## RACE DISCRIMINATION IN VIOLATION OF
## THE MISSOURI HUMAN RIGHTS ACT

98. Plaintiff realleges and incorporates herein by reference each and every of the preceding allegations of this Petition as if fully set forth herein.

99. Plaintiff's race was a compelling factor in such behavior as above-described.

100. Defendant Aberdeen's actions constitute an unlawful employment practice and a violation of Plaintiff's rights under the Missouri Human Rights Act.

101. As a direct result of such conduct, Plaintiff sustained damage due to his termination.

102. Such illegal acts include subjecting an individual to a hostile work environment as a result of that individual's race, color, religion, national origin, sex, ancestry, age or disability.

103. Plaintiff was subjected to a hostile and offensive work environment at Defendant Aberdeen based on his race, which Plaintiff found and a reasonable person would find to be offensive, and which altered the terms and conditions of his employment.

104. Through the actions of its supervisors and management, Defendant Aberdeen subjected Plaintiff to conduct that he found, and that a reasonable person would find, sufficiently severe or pervasive to alter the terms, privileges, or conditions of his employment and create a hostile and abusive working environment.

105. All actions or inactions of or by Defendant Aberdeen occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

106. As a direct and proximate result of the unlawful conduct of Defendant Aberdeen, as set forth herein, Plaintiff has suffered damages which include loss of past and future wages

and benefits, a detrimental job record, both past and future, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, mental anguish, anxiety, loss of enjoyment of life, loss of sleep, and other non-pecuniary losses.

107. The conduct of Defendant Aberdeen and its employees was outrageous, and evidence an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff, Mr. Timothy Marshall, respectfully requests judgment in his favor against Defendants, jointly and severally, for compensatory damages and punitive damages in excess of $25,000.00, together with pre- and post-judgment interest, plus costs of this action, reimbursement of back pay with interest, reinstatement and/or front pay, attorneys' fees, and such other relief as the Court may deem just and proper under the circumstances.

## COUNT III
## HARASSMENT IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT

108. Plaintiff realleges and incorporates herein by reference each and every of the preceding allegations of this Petition as if fully set forth herein.

109. Plaintiff is an individual protected within the meaning of Title VII.

110. Title VII forbids an employer from discriminating against any individual with respect to his "race, color, religion, sex, national origin, age, disability or genetic information."

111. Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

112. Such illegal acts include subjecting an individual to a hostile work environment as a result of that individual's race, color, religion, sex, national origin, age, disability or genetic information.

113. As more fully delineated in the Facts section herein, Defendant's conduct, by and through the conduct of its employees, was severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

114. Plaintiff was subjected to a hostile and offensive work environment at Aberdeen based on his race, which Plaintiff found and a reasonable person would find to be offensive, and which altered the terms and conditions of his employment.

115. Through the actions of its supervisors and management, Defendant Aberdeen subjected Plaintiff to conduct that he found, and that a reasonable person would find, sufficiently severe or pervasive to alter the terms, privileges, or conditions of his employment and create a hostile and abusive working environment.

116. All actions or inactions of or by Defendant Aberdeen occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

117. As a direct and proximate result of the unlawful conduct of Defendant Aberdeen, as set forth herein, Plaintiff has suffered damages which include loss of past and future wages and benefits, a detrimental job record, both past and future, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, mental anguish, anxiety, loss of enjoyment of life, loss of sleep, and other non-pecuniary losses.

118. The conduct of Defendant Aberdeen and its employees was outrageous, and evidence an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff, Mr. Timothy Marshall, respectfully requests judgment in his favor against Defendants, jointly and severally, for compensatory damages and punitive damages in excess of $25,000.00, together with pre- and post-judgment interest, plus costs of this action, reimbursement of back pay with interest, reinstatement and/or front pay, attorneys' fees, and such other relief as the Court may deem just and proper under the circumstances.

> Respectfully submitted,
>
> KODNER WATKINS, LC
>
>
> By: */s/ Anthony S. Bretz*
> ANTHONY S. BRETZ, #61075
> Attorney for Plaintiff
> The Pierre Laclede Center, Tower Two
> 7733 Forsyth, Suite 600
> St. Louis, Missouri 63105
> (314) 727-9111
> (314) 727-9110 Facsimile
> E-mail: tbretz@kwklaw.net